The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff

v.

RPM MOTORS AND SALES, LLC,

Defendant.

NO. CR21-5184BHS

**PLEA AGREEMENT**

The United States of America, by and through Tessa M. Gorman, United States Attorney for the Western District of Washington, and Seth Wilkinson, and Cindy Chang, Assistant United States Attorneys, and Defendant RPM Motors and Sales, LLC, and its attorneys, Brian Heady and Paula Olson, enter into the following Plea Agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **The Charge**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and to enter a plea of guilty to the charge of Conspiracy to Violate the Clean Air Act in violation of 18 U.S.C. § 371, as charged in Count 1 of the Indictment.

2. **Elements of the Offense**. The elements of Conspiracy to Violate the Clean Air Act are as follow:

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

*First*, there was an agreement between two or more persons to violate the Clean Air Act;

*Second*, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

*Third*, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The elements of the crime of violating the Clean Air Act in violation of 42 U.S.C. § 7413(c)(2)(C) are as follow:

*First*, the defendant falsified, tampered with, or rendered inaccurate, a monitoring device or method;

*Second*, the monitoring device or method was required under the Clean Air Act; and

*Third,* the defendant acted knowingly.

Defendant acknowledges that under established principles of corporate liability and respondeat superior, as these principles apply in the instant case, corporate defendants are liable for the actions of their employees, agents, and servants under circumstances where the employees, agents, and servants are acting within the scope of their agency and their actions are intended, at least in part, to benefit the corporate defendant. *See, e.g. United States v. Beusch*, 596 F.2d 871 (9th Cir. 1979); *United States v. Powder Puff Co.*, 163 F.2d 1008 (7th Cir. 1947); and *New York Central and Hudson River R.R. v. United States*, 212 U.S. 481, 495 (1909).

3. **The Penalties**. Defendant understands that the statutory penalties applicable to the offense of Conspiracy in violation of 18 U.S.C. § 371 as follow: a fine of up to five hundred thousand dollars ($500,000), or twice the gross pecuniary gain to the defendant or the gross pecuniary loss to the victims of the offense, a period of probation of up to five (5) years, and a mandatory special assessment of four hundred dollars ($400).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant understands that as a part of any sentence, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

4. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a. The right to plead not guilty and to persist in a plea of not guilty;

b. The right to a speedy and public trial before a jury of Defendant's peers;

c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e. The right to confront and cross-examine witnesses against Defendant at trial;

f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

5. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

6. **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7. **Corporate Authorization.** The Defendant agrees that this Plea Agreement will be executed by a person authorized by law and by Defendant to enter into this agreement and to plead guilty on behalf of the Defendant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8. **Statement of Facts.** Defendant admits Defendant is guilty of the offense charged in Count 1. The parties agree on the following facts:

a. ***Background:*** Defendant RPM Motors and Sales, LLC (RPM Sales) is a limited liability company that, during the offense period, sold cars and trucks from a facility in Woodland, Washington that performs repair work and modifications on diesel trucks. RPM Sales is owned by Sean and Tracy Coiteux. Sean and Tracy Coiteux also own Racing Performance Maintenance Northwest, LLC (RPM), an automotive repair facility in Ridgefield, Washington.

b. Diesel exhaust is known to contain a variety of air pollutants, such as particulate matter (PM), nitrogen oxides (NOx), carbon monoxide (CO) and non-methane hydrocarbons (NMHC), as well as substances identified as hazardous air pollutants under the Clean Air Act: Ethylbenzene, Formaldehyde, n-Hexane, Lead Components, Manganese Compounds, and Mercury Compounds.

c. The federal Clean Air Act requires that diesel trucks comply with regulations issued by the Environmental Protection Agency (EPA) limiting the amount of pollutants that vehicles, including diesel trucks, emit. To meet these standards, diesel truck manufacturers install pollution control devices on the trucks they manufacture.

d. EPA regulations also require diesel truck manufacturers to install on their trucks monitoring devices known as on-board diagnostic systems (OBDs). The OBD system includes sensors that monitor the vehicle's pollution control equipment. The OBD alerts the driver if there is a malfunction with the truck's pollution control systems. If the alert is not addressed, a malfunction indicator or "check engine" light will illuminate, and the OBD may force the vehicle's engine to shut down, or place the vehicle in a state known as "limp mode," which can limit the maximum speed of the vehicle to as low as five miles per hour. It is a felony to tamper with or render inaccurate any monitoring device required by the Clean Air Act, including an OBD.

e. ***Deletes and Tunes of Pollution Control Systems:*** Persons seeking to evade the Clean Air Act's pollution controls have developed methods of removing or

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

rendering inoperative pollution control hardware systems. These modifications are marketed to truck owners as cost saving measures, and as improving the horsepower, torque, and other characteristics of diesel engines. The act of removing a vehicle's pollution control hardware is referred to as a "delete." EPA studies have determined that a single deleted diesel truck can cause pollution equal to between 30 and 1,200 similar trucks with compliant emissions systems, depending on the pollutant and the model of the truck.

f. If a truck is deleted, a properly functioning OBD will detect the removal or malfunction of the pollution control hardware and activate a check engine light. The OBD may cause the vehicle to become inoperative or go into limp mode. Therefore, a mechanic performing a delete will also disable the OBD. The act of rendering the OBD inaccurate is often referred to as a "tune" or a "flash." It is a felony to falsify, tamper with, or render inaccurate any monitoring device required by the CAA, including an OBD. 42 U.S.C. § 7413(c)(2)(C).

g. ***Offense Conduct:*** Starting no later than January 1, 2018, and continuing until January 21, 2021, RPM's employees, regularly tuned and deleted diesel trucks for RPM's customers. RPM charged customers a fee of between approximately $1,000 and $2,000 for these deletes and tunes.

h. To conceal the unlawful deletes and tunes, RPM employees created invoices that used coded language to refer to the deletes and tunes. The invoices generally referred to the deletes and tunes as "upgrades," followed by the letters "D" and/or "T," meaning "tune" or "delete." To further conceal the unlawful activities, employees did not to discuss deletes or tunes with customers over the telephone.

i. RPM Sales employees sometimes agreed with customers that, as part of the agreement to purchase and sell a diesel truck, RPM employees would unlawfully delete and tune the truck.

j. RPM Sales employees engaged in these unlawful activities with the intent to benefit RPM Sales.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

k. Between about January 1, 2018 and January 20, 2021, RPM deleted and tuned approximately 375 diesel trucks, and collected fees for tuning and deleting services totaling approximately $536,447. Some of these vehicles were deleted and tuned as part of sales agreements with RPM Sales customers.

l. ***The Conspiracy:*** As set forth above, RPM Motors and Sales LLC entered into an agreement with one or more persons to commit the crime of violating the Clean Air Act, knowing of its object and intending to help accomplish it.

m. As one example of an overt act in furtherance of the conspiracy, on August 22, 2020, an RPM Sales employee issued a "we owe/you owe" statement to an RPM Sales customer in connection with the sale of a 2013 RAM 3500 in which RPM Sales agreed that RPM would perform a delete and tune on the vehicle.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

**Offense Level**

The offense level is calculated as follows:

a. A base offense level of eight pursuant to USSG § § 2X1.1 and 2Q1.2; and

b. A six-level level enhancement pursuant to USSG § 2Q1.2(b)(1)(A) because the offense involved an ongoing or repetitive emission of a hazardous pollutant.

**Culpability Score**

The culpability score is calculated as follows:

a. A base culpability score of 5, pursuant to USSG § 8C2.5(a).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Sentencing Recommendations**. The parties have not reached any agreements regarding sentencing recommendations. Defendant understands that the parties' recommendations will not be binding on the Court, and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and will move to dismiss the remaining counts in the Indictment with respect to Defendant at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

14. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

15. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

16. **Statute of Limitations**. In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

17. **Completeness of Plea Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District

///

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated: March 18, 2024.

SEAN COITEUX
Corporate Representative of Defendant RPM Motors and Sales LLC

PAULA OLSON
Attorney for Defendant

SETH WILKINSON
Assistant United States Attorney

For
CINDY CHANG
Assistant United States Attorney

For
KARLA PERRIN
Special Assistant United States Attorney

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970